# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DEREK J. BINGHAM** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CASE NO. 17-CV-528-GKF-JFJ** |
| ) | |
| **NORTHEAST RURAL SERVICES, INC.,** ) | |
| **and GRAND TELEPHONE COMPANY, INC.** ) | |
| ) | |
| **Defendants.** ) | |

## MOTION TO DISMISS AND BRIEF IN SUPPORT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Northeast Rural Services, Inc. ("NRS") requests the Court dismiss this action in its entirety as to NRS based upon Plaintiff Derek Bingham's ("Bingham") failure to state claims upon which relief may be granted[1]. In support of this Motion, NRS directs the Court's attention to its Brief in Support.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### I.   STANDARD FOR MOTION TO DISMISS

In analyzing a motion to dismiss for failure to state a plausible claim, a court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual

---

[1] The Retaliation (Count 1), Wrongful Discharge in Violation of Public Policy (Count 2), Mental and Emotional Distress (Count 3) and Quantum Meruit (Count 4) claims are causes of action maintained by Plaintiff against NRS. Plaintiff's Tortious Interference with Contract (Count 5) claim is brought exclusively against Defendant Grand Telephone Company, Inc. ("Grand Telephone").

1

support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Labels and formulaic recitations are insufficient, and the Court should disregard conclusory statements. *Khalik v. United Airlines*, 671 F.3d 1188, 1190-1191 (10th Cir. 2012).

## II. FACTS ALLEGED BY COMPLAINT

For purposes of this Motion, Plaintiff's factual allegations are assumed to be accurate. In the Complaint, Bingham makes the following accusations:

1. While employed by Grand Telephone, Bingham applied for a job with NRS (Complaint, Doc. No. 2 at p. 3 ¶¶ 8 and 10).

2. On September 5, 2014, Bingham interviewed with NRS and was offered employment. Originally, his employment with NRS was to begin between Thanksgiving and early December 2014, but the "precise date he would begin work" for NRS was to be determined later, based on the construction of an office space (Doc. 2 at p. 3 ¶ 10).

3. When Grand Telephone learned Bingham "had applied for and apparently been employed by NRS", Grand Telephone "pursued a plan to discredit" Plaintiff and interfere with "Plaintiff's plans to work for NRS" (Doc. No. 2 at p. 4 ¶ 12). Grand Telephone's efforts included "communicat[ing] false rumors and gossip" to NRS about Plaintiff" (Doc. 2 at pp. 4 and 6, ¶¶ 13, 14, 21).

4. Based upon Grand Telephone's false rumors and gossip, NRS rescinded its offer of employment to Bingham before he ever began working at NRS (Doc. No. 2 at pp. 5, 7 and 8, ¶¶ 15, 28 and 39).

5. Bingham was not aware NRS had terminated or rescinded his employment until September 25, 2016. Bingham first filed a "Complaint" with the Equal Employment Opportunity Commission ("EEOC") on April 18, 2017, after NRS had allegedly terminated or rescinded his employment (Doc. No. 2 at p. 5 ¶¶ 16 and 18).

### III. ARGUMENT AND LEGAL AUTHORITIES

#### A. Bingham Has Failed to Plead a Title VII Retaliation Claim

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employment discrimination based upon an individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a). Additionally, Title VII makes it unlawful for an employer to retaliate against an employee because they have engaged in an activity protected by Title VII. 42 U.S.C. § 2000e-3(a).

For purposes of a Title VII retaliation claim, protected activity may include an individual filing a charge of employment discrimination and participating and/or assisting with an investigation regarding allegations of employment discrimination under Title VII. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1214-17 (10th Cir. 2015); *Barrett v. Salt Lake County*, 754 F.3d 864, 866-67 (10th Cir. 2014); *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210-11 (10th Cir. 2008). For purposes of maintaining a Title VII retaliation claim, protected activity may also be recognized when an individual has opposed an employer's practice or act that is violative of Title VII, such as complaining about discriminatory conduct. *E.G. Hansen v. Skywest Airlines*, 844 F.3d 914, 924-25 (10th Cir. 2016); *Zisumbo v. Ogden Regional Medical Center*, 801 F.3d 1185, 1199 (10th Cir. 2015);

*Petersen v. Utah Department of Corrections,* 301 F.3d 1182, 1188 (10th Cir. 2002).  ***At the very minimum, in order to plead a prima facie case of Title VII retaliation, a plaintiff must allege they engaged in an activity protected by Title VII, and allege the defendant retaliated against them as a result of such protected activity.***  *Barrett,* 754 F.3d at 866-67; *Hansen,* 844 F.3d at 925; *Lounds*, 812 F.3d at 1233; *Petersen*, 301 F.3d at 1188; *Somoza*, 513 F.3d at 1211-12; *Ward*, 772 F.3d at 1202-03; *Zisumbo*, 801 F.3d at 1199.  Here, Bingham has done neither.

Bingham alleges the retaliatory action by NRS was its rescission of an offer of employment before he began working at NRS (II, ¶ 4).  Bingham alleges NRS' action was based upon Grand Telephone's false rumors and gossip about Bingham (*Id.*).  ***Bingham has not alleged NRS' rescission of an offer of employment was based on any actions or activity by Bingham that were protected by Title VII.***

The only arguably protected activity alleged by Bingham in the Complaint is an assertion he filed a complaint with the EEOC (II, ¶ 5).  However, Bingham does not claim that his complaint to the EEOC was the reason for NRS termination or rescission of an employment offer.  Nor could he, inasmuch as Bingham alleges he made a complaint to the EEOC on April 18, 2017 – long after NRS allegedly terminated or rescinded his employment (II, ¶ 5).

Bingham has not alleged NRS terminated or rescinded his employment based on any activity protected by Title VII.  According to Bingham's Complaint, his filing with the EEOC occurred long after NRS had allegedly rescinded or terminated his employment, and in any event, it was not the reason for NRS' alleged termination or rescission.  Accordingly, Bingham's Count I alleging Title VII retaliation should be dismissed.

### B.     Bingham Has Failed to Plead a Claim for Wrongful Discharge in Violation of Public Policy

Oklahoma recognizes a cause of action for wrongful discharge in violation of "public policy" pursuant to the Oklahoma Supreme Court's decision in *Burk v. K-Mart*, 770 P.2d 24 (Okla. 1989). Oklahoma's Supreme Court has made it clear that *Burk* torts are unique and only constitute a "narrow class of cases in which the discharge is contrary to a clear mandated policy as articulated by constitutional, statutory, or decisional law". *Shero v. Grand Savings Bank*, 161 P.3d 298, 300 (Okla. 2007) (citing *Burk*, 770 P.2d at 28-29). The *Burk* tort must be "tightly circumscribed". *Shero*, 161 P.3d at 300 (affirming dismissal of *Burk* tort); *Rogers v. Alezopulos*, No. CIV-11-1140-C, 2012 W. 1232007, at *1 (W.D. Okla., Apr. 12, 2012) (dismissing *Burk* tort).

In order to plead a public policy discharge claim, Bingham must allege and identify a public policy found in Oklahoma's constitutional, statutory or decisional law that was violated by his employment discharge. *See, e.g., Roberts v. International Business Machines Corp.*, 896 F.Supp.2d 1068, 1082 (N.D. Okla. 2012), *affirmed by* 733 F.3d 1306 (10th Cir. 2013). In this particular case, Bingham bases his Wrongful Discharge cause of action on a claim that his termination violated the public policy articulated under 25 Okla. Stat. § 1302 (Doc. 2, p. 7 at ¶ 30). Bingham's Wrongful Discharge cause of action fails for two independent reasons.

First, 25 Okla. Stat. § 1302 prohibits employment discrimination on the basis of a plaintiff's race, color, religion, sex, national origin, age, genetic information or disability. 25 Okla. Stat. § 1302(A). Bingham has not alleged he is a member of any of the protected classes identified in the Oklahoma statute. Moreover, Bingham affirmatively alleges that his discharge by NRS was based upon untrue accusations and unfounded investigations perpetrated by Grand Telephone – not by virtue of any class protected by 25 Okla. Stat. § 1302.

Additionally, Oklahoma law specifically precludes Bingham from maintaining a wrongful discharge tort claim against NRS based upon Oklahoma's Discrimination in Employment Act. 25 Okla. Stat. § 1350(A) creates a statutorily based cause of action and expressly abolishes any common law causes of action based on 25 Okla. Stat. § 1302, including wrongful discharge claims 25 Okla. Stat. § 1350(A). It is well established that a wrongful discharge tort action "is precluded if a statutory remedy exists that is sufficient to protect the Oklahoma Public Policy goal." *McCrady v. Okla. Dep't of Public Safety*, 122 P.3d 473, 475 (Okla. 2005). *See also, Kruchowski v. Weyerhauser Co.,* 202 P.3d 144, 150 (Okla. 2008). For both these reasons, Bingham's claim against NRS for Wrongful Discharge in Violation of Public Policy should be dismissed.

### C. Bingham Has Failed to Plead a Claim for Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress ("IIED") under Oklahoma law, the plaintiff must show that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was ***extreme and outrageous***; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2009) (emphasis added). In *Breeden v. League Servs. Corp.*, the Oklahoma Supreme Court made it clear that it is the duty of the court to "in the first instance, [ ] determine whether the defendant's conduct may be reasonably regarded so extreme and outrageous as to permit recovery . . . ." 575 P.2d 1374, 1377 (Okla. 1978). Thus, at the motion to dismiss stage, "[t]he trial court must assume a 'gatekeeper role' and make an initial determination that the alleged conduct 'may reasonably be regarded as sufficiently extreme and outrageous' to maintain a claim for intentional infliction of emotional distress."

6

*Cherry v. Okla. ex rel. Dep't of Human Servs.*, No. 14-CV-401-JED, 2017 WL 4158630 at *2 (N.D. Okla., Sep. 19, 2017) (quoting *Trentadue v. United States*, 397 F.3d 840, 856 n.7 (10th Cir. 2005)).

In examining what sort of conduct is "extreme and outrageous" in the context of a claim for IIED, the *Breeden* Court goes on to state that:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Id.* at 1376 (citing Restatement (Second) of Torts, § 46, cmt. d).  The facts alleged in Bingham's Complaint do not point to any conduct by NRS that even approaches the "extreme and outrageous" threshold for an IIED claim.

According to Bingham's Complaint, Bingham interviewed for a job with NRS, was offered a job by NRS, and later learned that NRS had terminated his employment or rescinded the offer after hearing negative rumors from Bingham's former employer (II, ¶¶ 2-4).  No reasonable person would consider an employer's rescission of a job offer or termination prior to the start of employment under these circumstances "so extreme in degree" as to be "utterly intolerable in a civilized society."

Additionally, numerous other courts in jurisdictions that also follow the Restatement (Second) construction of the IIED claim have determined that termination of employment does not in and of itself constitute "outrageous" conduct.  *See, e.g., Southwestern Bell Mobile Systems, Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998) ("[T]he mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous."); *Mares v. Conagra Poultry Co.*, 773 F.Supp. 248, 253 (D. Colo.

1991) ("[T]ermination from employment, without more, does not constitute outrageous conduct."); *Cunningham v. United Nat. Bank of Washington*, 710 F.Supp. 861, 864 (D.D.C. 1989) (stating that IIED "is reserved for unusually outrageous conduct, and should not be successfully pursued by merely alleging "unfair" circumstances surrounding a termination of employment").

NRS' conduct as alleged in Bingham's Complaint was not "extreme and outrageous" by any reasonable standard, and as another Oklahoma court declared, "[t]here is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of the individual." *Floyd v.* Dodson, 692 P.2d 77, 80 (Okla. Civ. App. 1984). Thus, Bingham has not pleaded a plausible claim for IIED under Oklahoma law, and this claim against NRS must be dismissed.

### D.   Bingham Has Failed to Plead a Claim for Quantum Meruit

Oklahoma law recognizes a legal action for quantum meruit. *McCurdy Group v. American Biomedical Group, Inc.*, 9 Fed.Appx. 822, 827 (10th Cir. 2001). "Generally, quantum meruit is applied where a plaintiff renders valuable services benefitting a defendant under circumstances where the defendant was reasonably notified the plaintiff expected to be paid or where it would be unjust for the defendant to retain the benefit without paying." *Sholer v. State ex rel. Dept. of Pub. Safety*, 149 P.3d 1040, 1048 (Okla. Civ. App. 2006). In the employment context, an employer "who accepts [the] benefit of employee's services must pay therefor on quantum meruit in the absence of an agreement fixing the amount of his compensation." *North Am. Car. Corp. v. Green*, 52 P.2d 798, 802 (Okla. 1935).

Oklahoma law is thus clear that, in order for Bingham to recover under a theory of quantum meruit, Bingham must have rendered valuable services to NRS with the expectation of compensation, and NRS must have accepted the benefit of those services.  *See e.g., North Am. Car Corp.*, 52 P.2d at 802; *Sholer,* 149 P.3d at 1048; Okla. Unif. Jury Instructions – Civil § 23.10.  Bingham's Complaint does not allege or even allude to *any* valuable services rendered by him to the benefit of NRS.  In fact, Bingham's Complaint explicitly states that NRS' terminated Bingham's employment or rescinded its offer of employment "***before [Bingham] had an opportunity to begin working at the [NRS] facility.***"  (Doc. No. 2 at p. 5, ¶ 15) (emphasis added).

Absent an allegation of valuable services rendered by Bingham to the benefit of NRS, there is no basis for Bingham's recovery under a quantum meruit theory.  As such, the Complaint fails to state any claim for quantum meruit—let alone a plausible claim as required by the federal pleading standards—and must be dismissed.

## IV.   CONCLUSION

Based on the foregoing reasoning and authorities, NRS requests that the Court dismiss all Bingahm's claims, and that NRS be awarded attorney fees and costs incurred in defending this action.

Respectfully submitted,

*s/Charles S. Plumb*
Charles S. Plumb, OBA No. 7194
Mark A. Hayes, Jr. OBA No. 32794
McAfee & Taft, P.C.
2 West Second Street, Suite 1100
Williams Tower II
Tulsa, Oklahoma 74103
Telephone: (918) 574-3052
Facsimile: (918) 574-3152
charlie.plumb@mcafeetaft.com
mark.hayes@mcafeetaft.com

***Attorneys for Northeast Rural Services***

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2017, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Sloane Ryan Lile, Esq.
Anthony L. Allen, Esq.

*s/Charles S. Plumb*
Charles S. Plumb

20327635_1